**STRICKLAND TRANSP. CO., Inc. v. KOOL KOOSHION MFG. CO.**

No. 15120.

Court of Civil Appeals of Texas.
Fort Worth.
April 21, 1950.

Rehearing Denied May 19, 1950.

278

Currie & Muse and Ralph W. Currie, Dallas, for appellant.

Ungerman, Hill & Ungerman and Leonard E. Hoffman, Jr., Dallas, for appellee.

SPEER, Justice.

Appellees E. P. Harley and F. L. Hunziker, a copartnership doing business under the name of Kool Kooshion Manufacturing Co., at Oklahoma City, Oklahoma, sued appellant Strickland Transportation Company, a corporation in the County Court of Dallas County, at Law No. 1, Dallas County, Texas, to recover $502.50 for a lost shipment of merchandise delivered to and accepted by appellant for transportation from Oklahoma City, Oklahoma, to Houston, Texas, for legal interest thereon and for $20.00 attorney's fees under Article 2226, R.C.S.

Appellant's answer consisted of a special exception, which was waived or abandoned at the trial, and a general denial. There was a nonjury trial, resulting in judgment for appellees in the total sum of $558.84, which included the value of the lost merchandise, interest from the date it should have been delivered to the time of trial, and $20.00 attorney's fees, from which judgment this appeal was perfected.

Appellant relies upon two points of error, the first being in substance that the court erred in entering judgment for $558.-84 as it did when appellees' measure of damages was the value of the goods at destination at the time they should have been delivered, less the applicable freight charges unpaid, with legal interest to date of trial, and the appellees failed to discharge the burden of proof in establishing said measure of damages. The general proposition of appellant as to the measure of damages is substantially correct. The bone of contention here is upon whom did the burden of proof lie, under the pleadings, the nature and effect of the proof made as to the market value of the goods at destination, the time they should have reached their destination and whether or not the freight was paid by the shipper.

Bearing in mind that the trial was to the court and that no fact findings or conclusions of law were requested or filed, then in such circumstances all the pertinent testimony will be resolved as found by the court in support of the judgment entered and that the court did not consider irrele-

vant and incompetent testimony, we must determine the merits of the above point of error.

It is conceded by appellant that it is a common carrier; that on July 3, 1948, it received from appellees at Oklahoma City for transportation to Houston, Texas, thirty cartons of cushions, weighing 850 pounds and that the shipment was never delivered.

The consignee of the shipment involved here testified by deposition in response to written interrogatories that he ordered the shipment from Houston, the written order shows it; that he lived at Houston, and that the shipment was not delivered to him; that he notified appellees on July 20, 1948 that the goods had not arrived and appellees sent a duplicate shipment on July 27, 1948 by another carrier and that it arrived at Houston August 2, 1948. The consignee-witness knew the market value of the lost shipment on July 27, 1948, having received a duplicate shipment a few days later. The market value of the 300 cushions was $1.67½ each. No objection was interposed by appellant to the testimony so offered. Appellant complains in this court for the first time that the testimony of this consignee was not proof of the market value of the goods in Houston, Texas, at the time they should have arrived when there is no testimony when they should have arrived. The deposition had been on file in the case for several days when trial was had and no objections to them were made by appellant.

The shipment was received by appellant on July 3, 1948. An inquiry of value was made as of July 27, 1948. Appellant argues that since the second shipment went through in six days the inquiry as to value on a date twenty-four days after the goods were received by it is not warranted. We obeserve (1) that the lost shipment weighed only 850 pounds and is not shown to have been a truck load and appellant may or may not have been required to consume additional time in collecting its cargo; this is not an action for unreasonable delay; (2) the duplicate shipment moved by another carrier; and (3) there is nothing to indicate that there was any change in the market value during the limited period of time. In such circumstances we think the trial court did no violence to the uncontradicted testimony in these respects when he entered judgment as he did on market value at Houston at the time inquired about. Galveston, H. & S. A. Ry. Co. v. Brown, Tex.Civ.App., 175 S.W. 749; Scott v. Byers, Tex.Civ.App., 275 S.W. 1088, writ dismissed.

Under the point before us appellant asks a reversal because no proof was offered by appellees as to what amount of freight charges should have been deducted from the market value of the lost goods, hence it argues there was a failure to establish the true measure of damages. Upon the other hand, appellees contend that if appellant was entitled to a credit or offset of freight charges as against the total value of the lost goods at destination, it had the burden of pleading and proving such amount of freight charges and that they were unpaid; and that it did neither.

It appears to be the established rule in this state that the measure of damages for lost goods by a carrier is the value of the goods at destination with legal interest less unpaid freight for transportation. Galveston, H. & S. A. Ry Co. v. Ball, 80 Tex. 602, 16 S.W. 441; Texas & P. Ry. Co. v. Hoffecker, Tex.Civ.App., 123 S.W. 617. It is unnecessary for plaintiff to plead his measure of damages, but needs only to plead the facts. Dallas Railway & Term. Co. v. Strickland, Transportation Co., Tex.Civ.App., 225 S.W.2d 901. When, as in the instant case, trial is to the court and the facts are proven, the court will apply the proper measure of damage in arriving at the judgment. Matthews-Carr v. Brown Express, Tex.Civ.App., 217 S.W.2d 75. In the Ball case, supra, plaintiff alleged prepayment of freight and sought recovery for the value of the goods at destination, legal interest and the paid freight. The court disallowed the item of paid freight. In the Hoffecker case, supra, apparently defendant plead unpaid freight in off-set against plaintiff's claim and showed the freight had not been paid; that item was deducted by the appellate court from the established market value of the goods at destination.

In the case before us appellees made no allegations as to whether the freight had been paid but sought judgment for the value of the goods at destination at the time they should have been delivered with legal interest and statutory attorney's fees. Appellant presented no exceptions or objections to the petition on this account; nor did it plead the freight had not been paid nor did it object to the testimony when offered on market value, nor did it offer any competent testimony that the freight was unpaid. Appellant attempted to assume the burden of showing the freight was unpaid but its witness disclosed that he had no personal knowledge about the facts and over appellees' objection was permitted to say in substance that appellees did not pay the freight within his knowledge. Such testimony was clearly incompetent and the trial court did no violence to it when he disregarded it. Incompetent testimony will not support a judgment. 17 Tex.Jur. 922, sec. 416; Ward v. Wallace, Tex.Civ.App., 175 S.W.2d 611, 613, writ refused, w. m. The testimony was inadmissible in the first place. Panhandle & S. F. Ry. Co. v. McDonald, Tex.Civ.App., 227 S.W.2d 601, 603.

If the freight charges had been prepaid, even without an allegation to that effect, appellees' petition properly alleged a state of facts from which the court could fix their measure of damages, and when appellant failed to except or otherwise object to those allegations and the proof offered in support thereof, it waived such rights as it may have otherwise had in the situation. Rules 90 and 91, Texas Rules of Civil Procedure. The function of our trial courts is to adjudicate the rights of the parties in all matters presented to them by the pleadings, express or implied, and the testimony offered in support thereof; and in doing so is entitled to and may expect of the attorneys a fair exposition of the rights claimed by each, to the end that the court may pass upon such issues and terminate the litigation. Appellate courts entertain little sympathy for litigants who withhold their defenses from pleadings and appropriate objections to testimony, thus failing to give the trial court an opportunity to pass upon them and then complain for the first time in the appellate courts.

In this case the freight charges on an 850 pound cargo to destination could not have been any considerable sum, and while it could not be said to be so small that the courts will not take cognizance of it as compared to the claim sued on, yet it is quite obvious to us that appellant was in a much better position than appellees to know the amount of such charges. The bill of lading furnished to appellees by appellant did not disclose the amount of freight and naturally did not state whether paid or not. Appellant was a public carrier of freight and is shown by the record to have known at the time of filing answer and when the case was tried what the applicable freight rate to the shipment was and whether it had been paid. There is nothing in the record to show that appellee knew what the freight rate was. There is testimony to the effect that appellant as a public carrier had a rather elaborate organization for the purposes of carrying on its business. Its custom was for a pick-up man to call upon the shipper, receive his freight, give him a bill of lading (perhaps a copy), haul the freight to the carrier's dock, deliver the bill of lading to the dock foreman; (all of this was shown to have been done in this case); the dock foreman customarily delivered the bill of lading to a checker, he checked the goods onto the dock, and then delivered the bill of lading to the rate clerk, who in turn calculated the freight rate and gave all papers to the billing clerk who then billed the merchandise and from such bills the "manifest" of the whole cargo was made up.

If appellant followed the shown custom in the instant case, then it had calculated the freight rate and placed it on the billing. Whether such papers showed if freight was prepaid does not appear. All of these documents appear to have been in appellant's possession and none were offered in evidence. A failure to produce such evidence shown to be within the control of a party to which the other did not have access is a circumstance which may be construed as that such documents were

against the interest and contentions of the party withholding same from the court. Green v. Scales, Tex.Civ.App., 219 S.W. 274, and cases cited. For similar situations see Lindsey v. State, Tex.Civ.App., 194 S.W.2d 413, writ refused, n. r. e.; Smith v. Smith, Tex.Civ.App., 225 S.W.2d 1001. Viewing this record as a whole we do not think the point under consideration should be sustained.

Second point of error relied upon reads: "Attorneys' fees provided by Article 2226 are applicable only to cases involving $200.00 or less. Consequently it is fundamental error to allow attorneys' fees in this instance where the amount sued for exceeds $200.00."

Appellees sued for $502.50 with legal interest from the time delivery should have been made and recovery of $20.00 attorneys' fees under Article 2226, R.C.S., in addition to the amount of their claim, under appropriate allegations to the effect that this is a claim for lost freight by a common carrier, that plaintiffs were represented by attorneys, the claim having been made for said loss and that it remained unpaid for a period of more than thirty days after presentation thereof.

Appellant cites and relies upon cases of Missouri, K. & T. R. Co. of Texas v. Mahaffey, 105 Tex. 394, 150 S.W. 881; Missouri, K. T. Ry. Co. v. Harris, 234 U.S. 412, 34 S.Ct. 790, 58 L.Ed. 1377, L.R.A.1915E, 942; and Burlington-R. I. R. Co. v. McCartney, Tex.Civ.App., 54 S. W.2d 837.

A determination of the point of error before us requires a construction of Article 2226, R.C.S., as amended in 1923, and effective when this suit arose.

It is elemental that in an action which does not involve a contractual obligation that appellees could not recover attorney's fees in addition to the amount of their damages in the absence of a statutory provision therefor.

The earliest provision for attorney's fees in such cases as this, and in so far as is applicable here, is to be found in Acts of the 31st Legislature, Regular Session, 1909, p. 93, wherein the caption or title of the Act limited recovery of attorney's fees to cases in which the claim did not exceed $200.00. In construing that Act, the Supreme Court in the Mahaffey case, supra (1912), held that the title of the Act, which is required by the constitution, was an integral part of the law enacted thereunder and that although the body of the Act did not limit recovery of attorney's fees to cases where the claim was not in excess of $200.00, the title was a part of the Act and must be read and construed with the body of the Act, and when so done it appeared that the legislative intent was to limit recovery of statutory attorney's fees to cases involving claims not in excess of $200.00. No fault can be found with the construction given by the court of the statute as it then existed.

The Harris case by the United States Supreme Court, supra, decided in 1914, involved attorney's fees claimed on an amount in excess of $200.00 and the court, out of deference to the construction theretofore placed upon the Texas statute of 1909 by the Supreme Court of the State of Texas, followed the holding in the Mahaffey case, supra.

In 1923, the 38th Legislature amended the act of 1909, supra, now Article 2226, so as to read substantially as follows: "Hereafter any person in this state having a bona fide claim against any person or corporation doing business in this state for * * * any claim for lost or damaged freight * * * may present the same to such person or corporation * * * and if at the expiration of thirty days after the presentation of such claim the same has not been paid or satisfied, he may immediately institute suit thereon in the proper court; and if he shall finally establish his claim and obtain judgment for the full amount thereof, as presented for payment to such person or corporation in such court, he shall be entitled to recover the amount of such claim and all costs of suit, and in addition thereto a reasonable amount as attorney's fees; provided he has an attorney employed in the case, not to exceed $20.00, to be determined by the court or jury trying the case."

From the foregoing it will be noted that there is no limitation made upon the amount of the claim as a prerequisite to the recovery of an attorney's fee. The Supreme Court in the Mahaffey case, supra, in construing the Act of 1909, very definitely emphasized the fact that the Legislature had placed that limitation upon the amount of the claim in which attorney's fees could be recovered and gave good and wholesome reasons why the court would construe the legislative intent as limiting the amount upon which attorney's fees could be recovered to $200.00. We note that twelve or thirteen years after the date of the Mahaffey case, supra, and doubtless with knowledge of the construction placed upon the previous Act by the Supreme Court, the 38th Legislature amended the Act in 1923, now Article 2226, eliminating the reference to the limitation of a $200.00 claim as a requisite to attorney's fees.

Burlington-R. I. R. Co. v. McCartney, supra, decided by a Court of Civil Appeals in 1932, which case did not reach the Supreme Court, involved recovery of a $20.00 attorney's fee in a $225.00 claim and although that decision was subsequent to the amendment of 1923, the court, without distinguishing between the language used in the 1909 and 1923 Acts, gave the subsequent Act the same construction as given to the 1909 Act by the Supreme Court in the Mahaffey case, supra, and denied recovery of attorney's fees. We note, however, that in the McCartney case, supra, the court further based its denial of attorney's fees on the fact that plaintiff did not plead a presentation of his claim and that it had remained unpaid for thirty days thereafter, and therefore held there were no pleadings in the case to support a recovery of such statutory attorney's fees, and since appellant had filed no brief, it was denominated fundamental error. Whether or not the court properly construed the effective legislative Act at that time need not necessarily control the results reached therein, since at the date of that decision the court was clearly right in holding as it did that there was no pleading to support a judgment for attorney's fees and it therefore properly denied such a recovery.

In Gulf, C. & S. F. Ry. Co. v. Pearlstone Mill & Elevator Co., 53 S.W.2d 1001, 1004, decided in 1932 by the Commission of Appeals and approved by the Supreme Court, injunctive relief was sought to restrain respondent from filing and prosecuting ninety-seven small claims for grain shortages ranging from 52¢ to $9.93, in which it was threatening to sue on separate claims and collect reasonable attorney's fees in each case. For good reasons shown the injunctive relief was granted and the court in discussing the purpose of the statutory provision for attorney's fees in such cases said substantially that the purpose of such an Act is to permit a speedy and effective settlement of small but well founded claims and to prevent groundless defenses which sometimes defeat the ends of justice. The court went on to say that the allowance of attorney's fees is confined to a reasonable amount for such services, not to exceed $20.00 where an attorney is actually employed. The court further indicated that unquestionably the purpose of the law is to "require the defendant to reimburse the plaintiff for a part of his expenses not otherwise recoverable 'in addition to his claim and costs.' The payment of an attorney's fees is a necessary consequence of the litigation, and some one must pay it. It is reasonable to impose it upon the party whose refusal to pay the just claim renders the litigation necessary."

In arriving at the legislative intent in the passage of the statute now under consideration, we must bear in mind that legislative enactments subsequent to the time involved here have no bearing on the rights of the parties to this litigation; yet we note that the 51st Legislature in 1949, Vernon's Ann.Civ.St. art. 2226, evinced its obvious intention to yet liberalize the rights of persons sustaining losses at the hands of common carriers and amended Article 2226, R.C.S., passed in 1923, retaining some of the provisions found in the earlier statute and provided that where claims for lost freight were presented to the carrier and the claim remained unpaid for a

period of thirty days and if claimant is represented by an attorney and he obtains judgment for *any amount of the claim,* he may also recover a reasonable attorney's fee, the amount of the claim or fees are not limited by statute but the amount of attorney's fees are to be determined by trier of the facts.

We note by the point under consideration that appellant assigns the allowance of attorney's fees as fundamental error. It perhaps is based upon the statement made by the court in the McCartney case, supra, to that effect, but clearly since appellant in that case filed no brief, the appellate court found that plaintiff had no pleadings upon which to recover attorney's fees, hence denominated it fundamental error.

Appellees vaguely suggest that appellant could not rely upon anything in connection with the recovery of attorney's fees unless it could be termed fundamental error; that such errors are those which are in violation of public policy and are contrary or adverse to the interest of the general public, citing Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979. Appellees insist that the provisions of Article 2226 are not against public policy of this state, and with this we agree. Appellees further argue that under this record appellant was driven to the necessity of contending that the allowance of attorney's fees was fundamental error because it had not pleaded any special defense to a recovery of attorney's fees. That it had waived all objections to appellees' right of such recovery, because: (1) It had acquiesced in the trial by the court of that issue; (2) had waived the reasonableness of the $20.00 fee when it had filed a special exception thereto and did not present it to the court nor obtain a ruling thereon; and (3) had stipulated that $20.00 was reasonable attorneys' fee if appellees were entitled to recover such, citing Rule 90, T.R.C.P.; Gregory v. Reynolds, Tex.Civ.App., 219 S.W.2d 107.

Appellees further point out that appellant is here defendant against the item of attorney's fees as presenting fundamental error, when its only pleaded defense was one of general denial. It did plead what is termed a special exception based upon the contention that attorney's fees in such cases are not recoverable in interstate shipments, such as this; however, it is quite apparent that the exception was waived.

 From what we have said it is our conclusion that under Article 2226, R.C.S., effective at the time involved here, when appellees plead and proved that their claim of $502.50 was presented to appellant for payment and at the expiration of thirty days thereafter it remained unpaid and suit was filed thereafter and they recovered judgment for the full amount of the claim, they were entitled to recover the $20.00 attorney's fee provided by the statute as against the defenses raised by appellants.

For the reasons indicated and the authorities noted, we conclude that no error is shown requiring a reversal of the judgment in this case. We therefore overrule both points of error and affirm the judgment of the trial court.